UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIS A. BROWN,<br><br>  Plaintiff,<br>v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 5:21-cv-127-AMM<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF DECISION

Plaintiff Willis A. Brown brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

**I.   Introduction**

On September 12, 2019, Mr. Brown filed an application for benefits under Title II of the Act, alleging disability as of July 14, 2019. R. 15, 71–79. Also on September 12, 2019, Mr. Brown filed an application for supplemental security income under Title XVI of the Act, alleging disability as of July 14, 2019. R. 15,

62–70. Mr. Brown alleges disability due to lower back problems. R. 62, 71. He has at least a high school education and has past relevant work experience as a tractor-trailer truck driver and construction worker II. R. 22.

The Social Security Administration ("SSA") initially denied Mr. Brown's applications on February 11, 2020, and again denied them upon reconsideration on May 29, 2020. R. 15, 62–79, 84–103. On June 5, 2020, Mr. Brown filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 15, 128–29. That request was granted. R. 130–35. Mr. Brown received a telephone hearing before ALJ John R. Daughtry on August 20, 2020. R. 15, 28–61. On September 16, 2020, ALJ Daughtry issued a decision, finding that Mr. Brown was not disabled from July 14, 2019 through the date of his decision. R. 12–23. Mr. Brown was forty-three years old at the time of the ALJ decision. R. 23, 62.

Mr. Brown appealed to the Appeals Council, which denied his request for review on December 31, 2020. R. 1–3. After the Appeals Council denied Mr. Brown's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On January 27, 2021, Mr. Brown sought this court's review of the ALJ's decision. *See* Doc. 1.

**II.    The ALJ's Decision**

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant

is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ

determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

The ALJ determined that Mr. Brown meets the insured status requirements of the Act through December 31, 2024. R. 15, 17. Next, the ALJ found that Mr. Brown had not engaged in substantial gainful activity since his alleged onset date. R. 17. The ALJ decided that Mr. Brown had the following severe impairment: degenerative disc disease (lumbar spine) with a history of L3 compression fracture. R. 17–18. The ALJ found that Mr. Brown's history of a gastric ulcer with associated anemia and remote history of a right foot injury were "non-severe" because "[t]he evidence of

record suggests that these conditions have not imposed more than minimal limitations on [Mr. Brown's] ability to perform basic work activities since his alleged onset date." R. 18. Overall, the ALJ determined that Mr. Brown did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" to support a finding of disability. R. 18.

The ALJ found that Mr. Brown's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 19. The ALJ found that Mr. Brown had the "residual functional capacity to perform light work" with certain limitations. R. 18. The ALJ determined that Mr. Brown may: lift and/or carry up to twenty pounds occasionally, and up to ten pounds frequently; stand or walk up to three hours in an eight-hour workday; sit up to six hours in an eight-hour workday, with the option to alternate/adjust his position hourly for two minutes for stretching; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and occasionally be exposed to hot and cold temperature extremes and vibrations. R. 18. The ALJ also determined that Mr. Brown must not: climb ladders, ropes, or scaffolds; or be exposed to workplace hazards such as unprotected heights and dangerous moving machinery. R. 18

According to the ALJ, Mr. Brown was "unable to perform any of his past relevant work" as a tractor-trailer truck driver and construction worker II. R. 22.

According to the ALJ, Mr. Brown is "a younger individual," and he has "at least a high school education," as those terms are defined by the regulations. R. 22. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not he has transferable job skills." R. 22. Because Mr. Brown's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled light occupational base." R. 23. That expert testified that such individual "would be able to perform the requirements of representative unskilled limited light occupations such as final assembler, . . . order clerk, . . . and weight tester." R. 23, 55 (emphasis omitted).

Based on these findings, the ALJ concluded that Mr. Brown did not have a disability as defined in the Act, from July 14, 2019 through the date of the decision, September 16, 2020. R. 16, 23. Mr. Brown now challenges that decision.

## III. Factual Record

The alleged disability onset date is July 14, 2019, and the only argument before the court relates to limitations from Mr. Brown's lower back injury and pain. Therefore, only medical evidence related to his lower back is discussed below.

6

Mr. Brown presented to Community Urgent Care of Hartselle on October 20, 2017 after hearing a pop in his back the previous day while helping lift his father. R. 309–10. He complained of lower back pain. R. 310. Mr. Brown returned on October 27, 2017 stating that he was not getting better. R. 311. He again returned on October 30, 2017 with radiating lower back pain. R. 312. The visit notes state to "schedule lumbar MRI," which was authorized by Mr. Brown's insurance company on November 2, 2017. R. 312, 314. The MRI revealed: "an alignment within the normal range. No significant spondyiolistheses are identified." R. 317. Additionally, it revealed an "[a]cute or subacute partial compression fracture of L3," "[m]ild multilevel degenerative disc disease," and "[s]mall . . . tear or fissures along the posterior central aspect of the L4-5 disc." R. 318. It appears that Mr. Brown was prescribed Norco at all three October 2017 visits and tried other prescriptions. R. 313. He returned on December 8, 2017 and needed refills for his pain medication. R. 336.

Mr. Brown presented to the Spine and Neuro Center on November 17, 2017 complaining of lower back pain, and he stated that his pain improved with topical creams, pain medications, and muscle relaxers, but was aggravated with all activity. R. 357. He was prescribed Zanaflex and an LSO brace. R. 362. Mr. Brown presented to the Spine and Neuro Center on December 13, 2017 to follow up for his L3 compression fracture. R. 354. It was also a four-week follow-up visit for his LSO

7

brace, though Mr. Brown reported no improvement with the back brace. R. 354. Mr. Brown presented to the Spine and Neuro Center on March 7, 2018 to follow up for his L3 compression fracture. R. 352.

Mr. Brown was admitted to the Decatur Morgan Hospital on February 3, 2018, and discharged on February 12, 2018 after an acetaminophen overdose. R. 429. The visit notes indicate that Mr. Brown had received physical therapy for his L3 fracture, and he was found to be too high functioning for Health South rehabilitation. R. 429. While hospitalized, Mr. Brown underwent an MRI "that showed an anterior upper end plate compression fracture of L3, small focus of enhancement in posterior soft tissues of L4, L5 level which may be of no clinical significance." R. 430, 441.

Mr. Brown presented to the Lawrence Medical Center on July 15, 2019 for lower back and hip pain. R. 290, 296. Mr. Brown stated that the pain was the result of an injury, was acute, was mild to moderate, and had lasted for four days. R. 296. X-rays of the spine were ordered, R. 289, which found "[n]o significant abnormality of the lumbar spine[]" and [n]o significant abnormality of the thoracic spine." R. 290–91, 393. The lumbar spine findings were compared to X-rays taken on May 7, 2018: "Vertebrae: Again demonstrated is anterior compression of the L3 vertebral body similar to the prior exam. There is approximately 10% anterior vertebral body height loss." R. 290. Mr. Brown was prescribed Medrol and Robaxin and was advised to rest, ice, heat, and return to the clinic as needed or if symptoms worsen.

R. 299–300. The visit notes also indicate that Mr. Brown would be referred to a spine and neurological clinic if needed. R. 300.

Mr. Brown was admitted to the Decatur Morgan Hospital emergency department for back pain on September 12, 2019. R. 445. A CT scan of the lumbar spine was completed which was abnormal. R. 448. It showed: "FINDINGS: There is an old superior endplate fracture with some degenerative endplate herniation at L3. There is about 25% loss of height. This is stable from the MRI of 02/05/2018. No bony retropulsion. No disc herniation. No central canal stenosis. Alignment is anatomic. IMPRESSION: Compression deformity with superior endplate fracture at L3, stable from prior." R. 448, 450. Mr. Brown was advised to follow up with an orthopedic or spine center, take all medication as directed, and return to the emergency department for any new or worsening symptoms. R. 448.

On December 2, 2019, Mr. Brown completed an adult function report. R. 234–41. Mr. Brown reported that he: feeds and spends time with animals; has no problems with personal care; prepares his own meals; completes household chores such as laundry, vacuuming, and taking out the trash; goes outside "daily for movement"; drives a car; and goes grocery shopping. R. 235–37 He also reported that he's "up and down [because] of the pain" and cannot do yard work because of his back R. 235, 237. Mr. Brown also reported that his hobbies are TV, fishing, hunting, and camping, but that he does not do them much or "very often if any at all" since

injuring his back. R. 238. Socially, Mr. Brown sits and talks with others a couple times a month since his injury and goes to the local diner and church, but he isn't involved in activities like he was before his injury. R. 238–39. He noted that the following abilities are affected by his injury: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. R. 239.

Mr. Brown reported to the Lawrence Medical Center on December 25, 2019 for back pain. R. 456. An examination of his back revealed: "Right straight leg raise positive. Paralumbar tenderness is present on the right. Dorsiflexion at great toe normal bilaterally." R. 457. An X-ray of the lumbar spine showed no acute fracture. R. 457. After medication, Mr. Brown indicated that his pain was improved. R. 457. It appears Mr. Brown was given prescriptions upon discharge. R. 458.

Mr. Brown reported to the Lawrence Medical Center on July 3, 2020 for back pain, which he said "came on suddenly." R. 465. An X-ray of the lumbar spine showed an "old L3 compression fracture," but "[n]o acute fracture." R. 466. Mr. Brown was advised to follow-up with an orthopedic surgeon. R. 466. Mr. Brown was prescribed Toradol and Flexeril. R. 466.

Mr. Brown underwent a Functional Capacity Evaluation Report on August 12, 2020. R. 476–80. Mr. Brown reported a pain level of 6/10, taking ten Tylenols a day for pain relief, using a heating pad to alleviate pain, and spending hours a day reclining. R. 476. Mr. Brown was rated for light work. R. 476.

## IV. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No

11

decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V. Discussion

Mr. Brown alleges that the ALJ's decision should be reversed because the ALJ failed to properly consider Mr. Brown's subjective complaints. Doc. 11 at 2. Specifically, Mr. Brown alleges that the ALJ "minimized the objective evidence in the medical record that supports [Mr. Brown's] description of severe back pain," "improperly drew adverse inference from [Mr. Brown's] infrequent medical treatment without considering explanations for the infrequence," and "mischaracterized [Mr. Brown's] testimony." *Id.*

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other

subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. "In determining whether a claimant's impairments limit [his] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker*

*v. Comm'r*, 404 F. App'x 362, 366 (11th Cir. 2010). To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have

reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

After explaining the pain standard, the ALJ considered Mr. Brown's testimony about his symptoms to make his credibility determination. R. 18–19. With respect to his lower back problems the ALJ described Mr. Brown's testimony as follows:

> The claimant alleges he has suffered from disabling low back problems since his alleged onset date of July 14, 2019. The claimant alleges he has suffered from constant chronic tenderness, stiffness and pain in his low back that has radiated down into his legs and made them numb, tingle and weak since then because of his problem in that area. The claimant alleges his physical problems have seriously limited his ability to reach, lift, sit, stand, walk, bend, squat, kneel and climb since then, and prevented him from working in any capacity since that date.

R. 19. After "careful consideration of the evidence," the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms." R. 19. The ALJ then found that Mr. Brown's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 19. The ALJ considered the objective medical evidence from the Lawrence Medical Center on July 15, 2019, December 25, 2019, and July 3, 2020, and the Decatur Morgan Hospital on September 12, 2019. R. 19–20. The ALJ also

15

considered a functional capacity evaluation completed on August 12, 2020. R. 20. After considering this medical evidence, the ALJ wrote that "[i]n light of the above, the undersigned finds the medical evidence and the claimant's course of treatment are not entirely consistent with his allegations of disabling physical problems, and are consistent with his residual functional capacity assessment outlined above." R. 21.

The ALJ also discussed Mr. Brown's "allegations of not being able to obtain adequate treatment," activities of daily living as reported on his adult function report, state agency medical consultant opinions, and the functional capacity evaluation. R. 21. The ALJ concluded that Mr. Brown's

> allegations regarding the nature and severity of his impairment-related symptoms and functional limitations are not entirely consistent with the evidence for the relevant period in question. While the medical and other evidence of record supports some of the allegations regarding these symptoms, the alleged severity and associated functional restrictions are not well supported. The undersigned has carefully read and considered all the evidence of record and finds the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant.

R. 21–22.

Mr. Brown argues that "the ALJ made several statements in support of his denial which counsel does not believe are supported by substantial evidence." Doc. 11 at 11. *First*, he argues that "the ALJ minimized the objective medical evidence in

16

the medical record which supported [Mr. Brown's] claim," specifically the receiving "adequate medical care for his condition." *Id. Second*, he argues that the ALJ "dr[e]w adverse inferences from [Mr. Brown's] infrequent medical treatment without considering explanation for the infrequencies." *Id.* at 13. *Third*, he argues that the ALJ mischaracterized his testimony about his daily activities. *Id.* at 15.

Substantial evidence supports the ALJ's finding under the pain standard. As the Commissioner noted, "[i]mportantly, the ALJ did not find or suggest that there is no evidence to support [Mr. Brown's] subjective allegations of pain." Doc. 15 at 9. Indeed, after analyzing the entire record, the ALJ's residual functional capacity was "more restrictive" than that of both state agency medical consultants. *Id.* at 10; R. 21. Although both state agency medical consultants limited Mr. Brown to "a limited range of light work," the ALJ determined that Mr. Brown "may be more limited in standing and walking than they opined" and crafted his residual functional capacity in light of these limitations. R. 21. The ALJ's residual functional capacity was similar to that included in the functional capacity evaluation in the record. R. 21.

In analyzing Mr. Brown's statements and testimony, the ALJ clearly discussed the objective medical evidence such as prescription medication use without reported side effects, R. 19, X-ray imaging showing "an old L3 compression fracture and some mild degenerative changes in his lower spine," R. 19, CT imaging

showing "old L3 compression fracture and some degenerative changes," R. 20, and "a positive straight-leg raising test on the right." R. 20. Mr. Brown argues that the ALJ failed to mention two referrals to a spine surgeon. Doc. 11 at 13. However, the ALJ was not required to specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). The ALJ's decision indicates that he considered the medical evidence as a whole and did not broadly reject the evidence in the record.

With respect to Mr. Brown's explanation for his infrequent medical treatment, contrary to his assertions, the ALJ specifically acknowledged Mr. Brown's statement that he did not have health insurance. R. 21. Additionally, in his decision, the ALJ did not draw an adverse inference regarding Mr. Brown's lack of treatment, and instead stated that Mr. Brown's "allegations of not being able to obtain adequate treatment during the relevant period is not overly compelling" because he was seen by various doctors and received a functional capacity evaluation. R. 21. Mr. Brown is correct that though the ALJ cited treatment by the Spine and Neuro Center, R. 21, that treatment was well over a year before his alleged onset date. *See* Doc. 11 at 11–12. However, the visits to the Spine and Neuro Center discuss Mr. Brown's compression fracture at L3, which was similarly seen in imaging during the relevant period. R. 448, 450, 466. Therefore, though not during the relevant period, Mr. Brown did in fact receive treatment for the underlying lower back problem at the

Spine and Neuro Center. Additionally, the ALJ's assessment of Mr. Brown's "adequate treatment" was one of many factors in evaluating Mr. Brown's subjective complaints. *See* R. 19–21.

In addition to the medical evidence of record, the ALJ also considered Mr. Brown's activities per the SSA's regulations. R. 21. While Mr. Brown's testimony at the hearing suggests more limited activities, R. 41–42, his adult function report includes activities that support his ability to perform light work with certain restrictions as identified by the ALJ. R. 234–41. Mr. Brown reported that he was able to feed pets, prepare meals, do laundry, vacuum, take out the trash, go outside daily, and grocery shop. R. 235–37. He also reported going to the local diner and church. R. 238. While he listed hobbies (tv, fishing, hunting, camping), he reported not doing them "as much since [he] hurt [his] back." R. 238. The ALJ did not err in considering Mr. Brown's daily activities as inconsistent with his allegations of disability preventing work.

The ALJ was not "clearly wrong" to discredit Mr. Brown's subjective complaints. *See Werner*, 421 F. App'x at 938–39. Additionally, Mr. Brown has cited no evidence that would compel a different conclusion from that found by the ALJ. There is no evidence in the record to support Mr. Brown's testimony that his lower back pain prevents light work with the restrictions identified by the ALJ.

Accordingly, there is no error in the ALJ's consideration of Mr. Brown's subjective complaints.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 23rd day of September, 2022.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE